STATE, Plaintiff, vs. MADDOCK, Defendant.

*March 15—April 9, 1940.*

*Harlan B. Rogers,* counsel for the Board of State Bar Commissioners, for the plaintiff.

*H. G. Maddock* in *pro. per.* for the defendant.

PER CURIAM.   Special counsel for the Board of State Bar Commissioners has filed a brief in this court, the concluding paragraph of which is as follows:

"The Board of State Bar Commissioners at first did not feel that the conduct of the defendant was such as to warrant permanent disbarment, but in view of the defendant's attitude and conduct, it is now of the opinion that, for the protection of the public, the defendant should be disbarred."

The defendant did not file a brief in this court but appeared at our bar when the matter was heard.   He frankly admitted that it was improper for him to borrow $3,500 from Voss, his client, and conceded that some disciplinary action would be proper.   He, however, contended that com-

plete disbarment, under all of the circumstances, would be too severe.

The defendant is fifty-three years of age. He is married and has three children, a son and two daughters. The two daughters reside at home. His son is married and maintains his own home. The defendant obtained his prelegal education in Chicago and Kenosha. His professional education was received at the Chicago Law School. He passed the state bar examination and was admitted to the bar of this state in 1927. He has practiced his profession in Milwaukee since that time.

The complainant is seventy-eight years of age. He was born in Germany where he received a common-school education. He came to this country when he was twenty-six years of age. For about nine years prior to the hearing, he had operated a parking lot near the courthouse in the city of Milwaukee. Before that time he was engaged in the livery business. The $3,500 represented his life's savings.

In December, 1935, a Mrs. Simpson commenced an action against him in the civil court of Milwaukee county for breach of promise. Judge GAUSEWITZ, a civil judge, who was acquainted with the complainant, recommended that he employ the defendant as his attorney. The action was ultimately tried without a jury by the civil court of Milwaukee county (a branch not presided over by Judge GAUSEWITZ), which resulted in a judgment for $200 and costs against him. During the trial Voss was questioned as to what moneys he had on deposit in the bank. It appears that he was not only evasive but untruthful in stating the amount thereof. The court ordered him to produce his bankbook. When he brought it to the courthouse he first exhibited it to the defendant. It evidenced a savings account of $3,450. He thereafter exhibited it to the trial judge and made some explanation concerning his testimony theretofore given. While the trial was pending, another civil judge issued a restraining

order enjoining Voss from withdrawing his money from the bank pending the determination of the action. Several days later that order was vacated by the judge who had issued it upon having his attention called to the fact that the action was pending before another branch. Shortly after the restraining order was vacated, the defendant told Voss that the restraining order had been set aside and that he was free to withdraw his money from the bank. Voss testified that the defendant suggested that the money be withdrawn from the bank so as to prevent its being tied up. The defendant testified that the suggestion to withdraw the money from the bank was that of Voss. The defendant, however, took Voss to the bank in his automobile and waited outside while Voss withdrew the money. They then went to the defendant's office. The complainant and defendant do not agree as to what took place there or as to what conversation was had. However, at that time Voss turned over to the defendant the $3,450 withdrawn from the bank and $50 which he had in his pocket. At that time the defendant drew up and delivered to Voss the following note:

"$3,500.00                                  April 26, 1937.

"One year after date I promise to pay to the order of Guss Voss only thirty-five and no one-hundred dollars, payable at Number 203 Room, at 312 East Wisconsin avenue. Value received, with interest at six per cent per annum.
                              "H. G. MADDOCK,
                                   "312 East Wisconsin Ave."

At the same time, according to the testimony of the defendant, he wrote out the following copy, across the face of which he wrote: "Not to be used."

"$3,500.00                                  April 26, 1937.

"One year after date I promise to pay to the order of Guss Voss thirty-five hundred and no/100 dollars. Payable at Room 203—312 Wis. Ave. Value received with interest at six per cent per annum."

Voss testified that he did not loan the money to the defendant, that he did not know the instrument delivered to

him was a note and that he thought it was only a receipt. Some time after the instrument above mentioned was given to him, the complainant asked the defendant for $100. According to his testimony, the defendant "stalled him off." He became apprehensive and consulted Mr. Zabel of the Milwaukee bar. He decided to have the firm of Rubin, Zabel & Ruppa substituted for the defendant and to take charge of the appeal. Mr. Zabel attempted to contact the defendant by telephone but was unsuccessful. On July 19, 1937, he wrote a letter to the defendant in which he referred to the action brought by Mrs. Simpson, and said:

"He desires to substitute our firm as his attorneys in said matter, and has consulted us with reference to other matters concerning both the action and his dealings with yourself."

Mr. Zabel further requested the defendant to see him at his earliest convenience so that the matters might be discussed. There was no response by the defendant to this letter. On July 21, 1937, Mr. Zabel again wrote the defendant a letter in which, among other things, he said:

"Please be advised that Mr. Guss Voss has consulted us relative to certain claims against you, concerning which it is important we see you without further delay."

and in which proceedings were threatened. The defendant did not respond to that letter, but on July 23d went to the complainant's parking lot, apparently for the purpose of making a payment direct to the complainant. The complainant asked the defendant to accompany him to his room near by. There the defendant paid to the complainant $500 and $52.50, being three months' interest on $3,500 at six per cent interest. The defendant at that time presented to the complainant an instrument denominated a "receipt and release." It acknowledged the receipt by the complainant of the sum of "five hundred dollars, being a partial payment on the note dated April 26, 1937, and due one year from date, in the amount of thirty-five hundred dollars," and further acknowledged the "receipt of payment of fifty-two dollars and fifty

cents, being interest on said note from April 26, 1937, to July 26, 1937, at the rate of six per cent per annum." It also recited that all differences between them had been settled and then continued:

"Gus Voss and H. G. Maddock doth hereby release the other . . . from all sums of money, accounts, actions, fees, claims and demands of whatsoever nature up to the date and execution of these premises, save and excepting the balance of $3,000 with interest owing to Gus Voss on the above-mentioned note, dated April 26, 1937, and due April 26, 1938."

The instrument was signed by Voss in the presence of the defendant. A substitution of attorneys in the action, signed by the defendant, was at the same time delivered to Voss. Voss apparently reported to Mr. Zabel, for on July 29th the latter again wrote the defendant and demanded the payment to his office of the balance of the $3,500. The $500 payment and "approximately $50" interest were mentioned in that letter. There was a dispute between the complainant and the defendant as to the conversations which preceded the giving of the note and as to the conversation which was had at the time the "receipt and release" was given,—the defendant claiming that the money was a loan to him for one year; the complainant claiming that the money was deposited only for safekeeping; the defendant claiming that he read the receipt to Voss and fully explained it to him; the complainant claiming that no conversation took place at the time he signed the receipt except that the defendant requested him to sign it. Some time later on, complaint was made to the grievance committee of the Milwaukee Bar Association. The defendant appeared before the committee and testified regarding the complaint. He stated, among other things, that he had invested the money but refused to state the nature of such investment. Some time thereafter complaint was made to the Board of State Bar Commissioners and the

matter was investigated by a member of the board and by Mr. Haven, who was at the time its counsel. At that time the defendant promised to pay the $3,000 to the complainant within sixty days. He, however, did not do so and this proceeding was brought. Meanwhile, the matter had been called to the attention of the district attorney of Milwaukee county which resulted in complaint being made to the district court and the issuance of a warrant. Shortly thereafter the defendant paid the full sum of the balance due the complainant, together with interest.

The referee found that the $3,500 was delivered to the defendant for safekeeping rather than as a loan. In other words, he gave full credit to the testimony of the complainant. The report of the referee states that "if he [the defendant] had freely admitted his indiscretion; if he had honestly stated that pressed by financial difficulties, he yielded to the temptation to obtain from Peter the money to pay Paul, I would have felt moved to make a recommendation for moderate discipline." The referee was evidently further influenced by the fact that the defendant did not "face the music and pay the piper" by promptly going to Mr. Zabel. The referee further condemned the defendant for his unlawyerlike conduct in paying the $552.50 to Voss instead of to Mr. Zabel. The referee finally stated that he was "forced to the deliberate conclusion that to his original dereliction, he has added wilful and conscious perjury."

The recommendation of the referee, in our opinion, is too severe. There is no finding of fraud, no finding of conversion. The referee refers to the transaction as an "indiscretion" and a "dereliction," and to the defendant's conduct in paying the $552.50 to the complainant as "almost as unlawyerlike and reprehensible as the original transaction."

We have a very high regard for the ability and fairness of the referee. However, a most painstaking reading of the record reveals that the complainant, as a witness, was shifty,

evasive, and untruthful. All this clearly appears from the cold record. It appears that in the trial of the breach-of-promise action he deliberately testified falsely as to the amount of his savings. In explanation of that testimony he ventured the statement that it was nobody's business how much money he had in the bank. Upon the hearing before the referee much of his testimony was obviously given under the impression that either the defendant or someone else was trying to recover money that had already been paid to him. We have so many misgivings concerning the truthfulness and credibility of the complainant, upon whose testimony this proceeding is principally based, that we cannot approve of the recommendations of the referee.

It was, of course, improper and highly unethical for the defendant, who had no financial responsibility, to borrow $3,500 from the complainant on an unsecured note. That amounted to an overreaching of a credulous client. The defendant frankly admits the impropriety, and concedes that he should be disciplined but not permanently disbarred. He has made full restitution. The record is barren of other charges of improprieties or unethical conduct. Without further discussion, we conclude that a suspension of his right to practice law for a period of two years should be adequate discipline for the unprofessional conduct of which, to our satisfaction, he was proven guilty.

It is therefore ordered that the defendant's license to practice as a member of the bar of this court be revoked and suspended for a period of two years from the date of the entry of judgment herein and thereafter until the same be restored and he be reinstated upon presentation of evidence of the payment by the defendant of the costs of these proceedings, including the fees of the reporter and the referee, to be taxed by the clerk of this court, and that it further be made to appear that he has in the meantime refrained from the practice of law.